IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |  |
|---|---|---|
| MASTER ROOF, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| v. | * | 1:23-CV-05978-ELR |
| | * | |
| | * | |
| WESTERN WORLD INSURANCE COMPANY, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

_____

**ORDER**

_____

This matter is before the Court on Plaintiff Master Roof, Inc.'s Motion for More Definite Statement of Some of Defendant's Affirmative Defenses [Doc. 24] and Defendant Western World Insurance Company's Motion for Summary Judgment [Doc. 28]. Having been fully briefed, these motions are ripe for review.

**I.   Background[1]**

From July 20, 2021, through August 21, 2023, Plaintiff Master Roof Inc. was insured under two consecutive commercial general liability insurance policies issued

---

[1] The facts recited in this section are undisputed.

by Defendant Western World Insurance Company (Policy No. NPP8818678 (the "First Policy") and No. NPP8928309 (the "Second Policy"); collectively, the "Policies"). Def.'s Statement of Undisputed Material Facts ("DSMF") ¶¶ 1–2 [Doc. 28-2]. On policy issuance, Western World estimated Master Roof's insurance premium payment—"Total Advance Premium." Id. ¶ 3. Pursuant to the terms of the Policies, at the end of the policy period, Western World was entitled to perform a premium audit to determine if Master Room owed any additional premium. Id. ¶¶ 3–8.

Western World conducted a premium audit in connection with the First Policy, determining that Master Roof owed $4,656.00 in an audit premium. DSMF ¶ 9. On February 6, 2023, an audit premium endorsement for the $4,654.00 in additional audit premium amounts owed was issued, and that amount was invoiced to Master Roof in installments on March 7, 2023, and on April 7, 2023. Id. ¶¶ 10–11. Master Roof did not pay the audit premium owed under the First Policy. Id. ¶ 12.

Before the August 21, 2023 expiration of the Second Policy, on July 7, 2023, Western World issued a Notice of Non-Renewal of Insurance (the "Notice"), informing Master Roof that Western World would not renew its insurance policy due to "nonpayment of audit premium." DSMF ¶¶ 15–16. Thus, as of August 21, 2023, Master Roof was no longer a current Western World policy holder. Id. ¶ 16.

Western World has not invoiced Master Roof for any audit premium in connection with the Second Policy, and Master Roof does not owe an audit premium in connection with that Policy. DSMF ¶ 14. And neither Western World nor anyone acting on its behalf has pursued collection of the audit premium on the First Policy. See id. ¶ 13.

On September 13, 2023, Master Roof filed a proposed class action complaint against Western World in the Superior Court of Gwinnett County, Georgia, asserting a claim for declaratory relief in the form of a decree that the audit premium provisions of Western World's insurance policy are unenforceable because the policy fails to inform the insured about how that premium is calculated. See generally Compl. [Doc. 1-1]. On December 27, 2023, Western World removed the case to this Court and timely answered the Complaint. See Notice of Removal [Doc. 1]; Answer [Doc. 14]. Thereafter, by a letter transmitted on March 14, 2024, Western World informed Master Roof that Master Roof's obligation for "all audit premium debt obligations" for the Policies "have been fully and forever discharged and written off with no balance due" and that Western World "waived any right, legal or otherwise, to seek any amounts related to premium audits conducted in connection with the Policies" and "waived the right" to "seek any additional amounts from Master Roof with respect to the Policies." Pl.'s Factual Position/Statement of Undisputed Fact In Opposition ("PSMF") ¶ 36 [Doc. 34]; DSMF ¶¶ 17–18 (cleaned

up). Western World issued the March 14, 2024 letter of its own initiative, without a request by or negotiations with Master Roof and without any promise from Master Roof regarding the continuing prosecution of this action. PSMF ¶¶ 7–13.

Having written off the balance due by Master Roof and waived its rights to any additional amounts, Western World moved for summary judgment, arguing that Master Roof lacks Article III standing to bring its claim. [Doc. 28-1]. Ahead of Western World's summary judgment motion, Master Roof moved for a more definite statement on Western World's affirmative defenses. [Doc. 24]. The Court takes up the summary judgment motion because it is case dispositive. For the reasons stated below, because the Court concludes that Western World's summary judgment motion is due to be granted, Master Roof's motion for more definite statement is due to be denied as moot.

## II.    Legal Standard

A court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). And a factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. at 248. The court should grant a motion for

summary judgment only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249–50.

When ruling on the motion, a court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324–26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

### III. Analysis

Western World seeks summary judgment on the grounds that Master Roof lacks Article III standing. "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). And to have

standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The plaintiff's standing must remain for the duration of the case, because "if at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1302 (11th Cir. 2011).

"The allegations necessary to establish standing depend on the type of relief sought." Mack v. USAA Cas. Ins. Co., 994 F.3d 1353, 1356 (11th Cir. 2021). "[I]f a plaintiff seeks *prospective* relief, such as a declaratory judgment, he must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Id. at 1357 (cleaned up) (emphasis in original). Master Roof's Complaint asserts a claim for declaratory judgement, seeking a declaration that Western World's audit premium provisions are unenforceable and an injunction requiring Western World to refund all audited premiums collected from previous insured. Compl. ¶¶ 59–66, 70(a), 70(c). Thus, Master Roof must show a "reasonable expectation that the injury [it] ha[s] suffered will continue or will be repeated in the

future." Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999).

Western World argues that Master Roof cannot meet this requirement for two reasons. First, Western World argues that, because of its debt write off and waiver, Master Roof is neither subject to nor at the risk of ongoing harm and, thus, lacks standing to pursue its declaratory judgment claim—the sole asserted claim. [Doc. 28-1 at 11–13]. Second, Western World argues that Master Roof lacks standing to pursue a declaratory judgment claim because it is no longer subject to Western World's insurance policy and, thus, faces no threat of future injury or harm under such a policy. [Docs. 28-1 at 13–16; 35 at 15–16].

The Court concludes that Master Roof lacks standing to seek a declaratory judgment regarding the enforceability of Western World's audit premium provisions because it cannot show a future harm. Specifically, Master Roof is no longer insured by Western World and, thus, there is no reasonable expectation that it will be subject to future harm from an audit premium under Western World's policy.[2] In Richardson v. Progressive American Ins. Co., No. 2:18-CV-715, 2022 WL 154426 (M.D. Fla. Jan. 18, 2022), the plaintiffs were former insureds of the defendant. Each of them

---

[2] Because Master Roof does not address this argument in its response brief, the Court considers Master Roof to have conceded this argument. See Smith v. Acumed LLC, No. 1:18-CV-02072-ELR, 2020 WL 11191827, at *3 (N.D. Ga. Apr. 3, 2020); Obondo v. HSGA Real Est. Grp., LLC, No. 1:20-CV-1155-TCB-CMS, 2022 WL 869591, at *15 (N.D. Ga. Jan. 25, 2022), R&R adopted, 2022 WL 869873 (N.D. Ga. Feb. 15, 2022).

was in a car accident where their car was declared a total loss and, after accepting a settlement amount from their car insurer (the defendant) for their respective cars, they filed a class action complaint seeking, among other things, declaratory and injunctive relief aimed at prohibiting the defendant from using its proprietary system for total loss valuations (the "WCTL methodology"). Id. at *1–2, 19. As to the plaintiffs' claims for declaratory and injunctive relief, the Richardson court concluded that because the plaintiffs were no longer insured by the defendant, they were not "likely to be subject to future injury from [the defendant's] application of the WCTL methodology" and, thus, lacked standing. Id. at *19. Similarly, here, Master World is no longer insured by Western World. Thus, there is no reasonable expectation that it will suffer the same injury—an audit and a determination that an audit premium is owed—under a future Western World policy issued to Master Roof. And Master Roof's "injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." Mack, 994 F.3d at 1358.

The Court also concludes that Master World lacks standing for its declaratory judgment action because, due to Western World's debt write off and waiver, it cannot show ongoing harm. On the issue of Western World's debt write off and waiver extinguishing Master Roof's standing to pursue this declaratory judgment action, Western World relies on the Eleventh Circuit's decision in Young v. Cmty.

8

Health Sys., No. 22-14255, 2023 WL 6121795 (11th Cir. Sept. 19, 2023), en banc reh'g den., No. 22-14255, 2023 U.S. App. LEXIS 30322 (11th Cir. Nov. 14, 2023), where, following the defendant's post-complaint write off of the plaintiff's debt and waiver of its right to collect, the court found that the named class-action plaintiff lacked standing to pursue declaratory and injunctive relief. Master Roof contends that Young does not address the prohibition against "picking off" of a putative class representative. [Doc. 32 at 10–11].[3] It relies on Sos v. State Farm Mutual Automobile Ins. Co., No. 21-11769, 2023 WL 5608014 (11th Cir. Aug. 30, 2023), as the latest Eleventh Circuit decision undergirding that prohibition.

"In general, a putative class action becomes moot if no named plaintiff with a live claim remains at the time of the district court's class certification decision." Sos 2023 WL 5608014, *9. If certain "exceptions appl[y], class certification 'relates back' to the filing of the complaint, giving the named plaintiff standing to pursue certification despite the intervening mootness of his individual claim." Id. One of the exceptions is the "picking off" exception where "a defendant resolves the named plaintiff's claims before class certification—by, for instance, paying the named

---

[3] Master Roof also appears to argue that Young is distinguishable because the plaintiff there sought both declaratory and injunctive relief prohibiting the defendant from imposing the fee in dispute in the future, whereas Master Roof seeks only a declaration that the premium audit provision are unenforceable and its injunctive relief request for recoupment of past audit premiums is contingent on the Court's entry of the requested declaration. [Doc. 32 at 9–10]. The Court is not persuaded by this distinction.

plaintiff's individual claim or ceasing illegal conduct as to the named plaintiff." Id. at *10. In Sos, the plaintiff filed a proposed class action alleging that the defendant failed to pay sales taxes and title transfer fees under an insurance contract. Id. at *1. With a motion for class certification pending, the district court granted Sos's motion for summary judgment on his individual claims for damages and prejudgment interest, and the defendant paid the judgment. Id. The district court then certified a class and granted summary judgment in its favor. Id. On appeal, the defendant argued that its payment of the judgement on Sos's claims mooted Sos's individual claims and the class claims. Id. at *8. The Eleventh Circuit expressed skepticism that a payment of final judgment mooted a live controversy, but concluded that even assuming Sos's claims were moot, Sos retained standing for his class claims under the "relation back" doctrine. Id. at *9. This was so because (1) the named plaintiff's claims were capable of being picked off—as was apparent by the defendant's attempt to twice buy out Sos's individual claims, to seek to resolve the case on an individual basis, to "surreptitiously" send checks to putative class members, and to pay Sos the judgment owed the day before the class certification conference—and (2) the named plaintiff had diligently pursued the class claims, as shown by Sos's pursuit of the class claims for six years and personal participation in discovery and mediations. Id. at *12–13 (citing Zeidman v. J. Ray McDermott & Co., 651 F.2d

1030, 1050 (5th Cir. 1981); Stein v. Buccaneers Ltd. P'ship, 772 F.3d 698, 707 (11th Cir. 2014)).

As Western World points out, however, the paradigm "pick off" case is the one where an offer of judgment under Federal Rule of Civil Procedure 68 or a payment in full satisfaction of the plaintiff's money damages claim is capable of mooting the case. [Doc. 35 at 7]. In such cases, Western World argues, where the plaintiff alleges a claim for money damages, a "pick off"—through an offer of judgment or the payment of a damages—requires the plaintiff's acquiescence to moot the controversy because "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." [Id. at 7–8] (quoting Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 165 (2016)). Western World contends that the "pick off" paradigm does not apply where the plaintiff merely seeks a declaration, in effect, that it does not owe any debt and the defendant discharges the debt that it contends the plaintiff owes—an act for which it does not need the plaintiff's permission—no live controversy remains. [Id.at 8].

The Court finds that Young, rather than Sos, which relates to buy offs of the plaintiff's monetary damages claims, is more on point to the facts of this case. In Young, the plaintiff filed a proposed class action complaint, arguing that the defendant hospital system charged her an emergency room fee that the parties' service agreement did not disclose. Young v. Cmty. Health Sys., No. 8:22-CV-329,

11

2022 WL 18495250, at *1, 3 (M.D. Fla. Sept. 16, 2022). The defendant referred the portion of the fee not covered by the plaintiff's insurance to a collection agency, and the plaintiff sued for, among other things, declaratory and injunctive relief. Id. at *2. After the plaintiff filed her complaint, the defendant discharged the debt and waived its rights to pursue it. Id. Addressing the plaintiff's standing following the debt discharge, the district court concluded that the discharge did not affect standing based on the principle that the "defendant's voluntary cessation of challenged conduct moots a claim only if it is absolutely clear that the challenged conduct could not reasonably be expected to recur." Id., at *4 (quoting Friends of the Earth, Inc. v. Laidlaw Evn't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)).

Reviewing the issue of standing de novo, however, the Eleventh Circuit concluded that, although there was ongoing harm alleged from the defendant's continuing collections efforts, with the defendant's discharge of the plaintiff's debt and its waiver of the right to collect, the plaintiff could no longer allege ongoing harm. Young, 2023 WL 6121795, at *2. Because the plaintiff could not show ongoing harm or future harm—since there was no indication that she would be subject to the same fee in the future—the Eleventh Circuit found that she lacked standing to pursue the declaratory and injunctive relief claims. Id.

Similarly, here, Western World applied a charge (the audit premium) to Master Roof, and Master Roof filed a class action seeking non-monetary relief in the

12

form of a declaratory judgment. Unlike in Young, Western World did not engage in collection efforts, but rather, like in Young, it wrote off the amount owed and waived any right to collect after Master Roof filed its Complaint. As in Young, that discharge and waiver served to extinguish any ongoing harm to Master Roof.

The Court also finds Long v. Ingenio, Inc., No. 10-CV-05761, 2015 WL 4760377 (N.D. Cal. Aug. 12, 2015), aff'd. 690 F. App'x 497 (9th Cir. 2017), instructive. There, a putative class action plaintiff brought suit alleging that he was defrauded into signing up for an advertising service program. Long, 2015 WL 4760377, at *1. On the defendant's showing that (1) the plaintiff did not pay what he owed for the advertising; (2) the defendant had ceased collections efforts; (3) after the suit was filed, the defendant wrote off the plaintiff's unpaid charges; and (4) the parties were not in a commercial relationship, the court rejected the plaintiff's argument of an attempted "pick off" and found that, under the circumstances, the plaintiff lacked standing. Id. *4. Again, the facts of Long square with the ones here: Master Roof did not pay the audit premium Western World invoiced; Western World did not pursue (much less cease) collection efforts; Western World wrote off Master Roof's debt after the Complaint was filed; and the Parties business relationship ended pre-suit. Under these facts, the Court agrees that

> [w]hile concerns similar to those raised in [cases applying the "pick off" exception] might arise even in the absence of monetary claims, . . . [i]n the absence of any ongoing relationship between the parties, or any monetary claims by plaintiff against defendants, or by

13

defendants against plaintiff, there is no case or controversy to be adjudicated, and the mere fact that [the plaintiff] has advanced class allegations does not support continued jurisdiction.

Id. Accordingly, Master Roof lacks standing to pursue this declaratory judgment action, and Western World's summary judgment motion is due to be granted.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 28] and **DENIES AS MOOT** Plaintiff's Motion for More Definite Statement of Some of Defendant's Affirmative Defenses [Doc. 24]. Because no issues remain pending, the Court **DIRECTS** the Clerk to **TERMINATE** this action.

**SO ORDERED**, this 31st day of March, 2025.

*/s/ Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia